UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMESON KEALII KAUHI and<br>RAMONA CARMELLE KAUHI,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS INC.;<br>BANK OF AMERICA CORPORATION;<br>COUNTRYWIDE FINANCIAL CORP.;<br>HSBC BANK, USA, NA;<br>RECONTRUST COMPANY, NA;<br>COUNTRYWIDE BANK FSB; ACE<br>SECURITIES CORPORATION; WELLS<br>FARGO BANK, NA,<br><br>Defendants. | CASE NO. C08-5580BHS<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION TO<br>DISMISS CERTAIN OF<br>PLAINTIFFS' CLAIMS<br>PURSUANT TO FED. R. CIV.<br>P. 12(b)(6) |

This matter comes before the Court on Defendants' motion to dismiss certain of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 59. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This matter arises out of a trustee's sale of Plaintiffs' real property. Plaintiffs defaulted on two non-subprime mortgages that secured their property. Plaintiffs contend that Defendants conspired to foreclose on Plaintiffs' property in order to resell the

ORDER - 1

property at a distressed price. The subject of the motion now before the Court is whether certain causes of action filed against Defendants are claims for which the Court can grant relief to the Plaintiffs.

In August of 2006, Plaintiffs acquired real property in Vancouver, Washington. Dkt. 28 at 13. To do so, they obtained two non-subprime[1] mortgages from WMC Mortgate Corp. *Id*. The first mortgage was for $463,055.00 and the second mortgage was for $115,765.00. *Id*. at 14. These loans were subsequently acquired through sale in a pooling and servicing agreement by Wells Fargo Bank, N.A. *Id*. at 27. All of the named Defendants in this matter are related to the loans at issue either by their origination, servicing, or subsequent transfer.

Plaintiffs allege they remitted payment for these two mortgages until they "began experiencing monetary difficulties in late 2007." *Id*. at 40. Plaintiffs thereafter began talking with Countrywide Home Loans, Inc. ("Countrywide") and Bank of America in an effort to secure mortgage payment modification relief. *Id*. at 26. On or about January 9, 2008, Plaintiffs, having defaulted on their loans, were served notice of a pending trustee's sale. *Id*. at 22. Following this notice and with the trustee's sale date approaching, Plaintiffs "filed an emergency Chapter 13 bankruptcy petition on 24 April 2008, automatically staying the 25 April 2008 trustee's sale, *In re: Kauhi*, U.S.B.C. WD. Wa, Case No. 08-41800." *Id*. at 27 (emphasis and bolding removed). Plaintiffs allege that they were assured that "Countrywide Home Loans Inc., and Bank of America, would provide [P]laintiffs with mortgage loan payment relief . . . ." Dkt. 28 at 18. Plaintiffs allege the following relevant communications:

---

[1] In their response to Defendants' motion, Plaintiffs make several references to the subprime mortgage crisis. Because Plaintiffs' mortgages that are the subject of this action were not subprime mortgages, these comments are irrelevant and will not be discussed further herein. *See* Dkt 28 (Plaintiffs' second amended complaint not alleging otherwise); *Compare* Dkt. 59 (Defendant's 12(b)(6) motion) with Dkt. 60 (Plaintiff's response).

> March 10, 2008: Plaintiffs submitted financial information of Plaintiffs' borrower's authorization to Countrywide for purposes of negotiating mortgage payment relief.
>
> March 14, 2008: Plaintiffs obtained written authorization to communicate directly with Countrywide to negotiate mortgage relief.
>
> March 18, 2008: Advised by Countrywide that Plaintiffs' file was reassigned from Joel Cox to Cedric Sandijian; Plaintiffs were advised to wait for a response from Countrywide.
>
> April 1, 2008: Plaintiffs spoke with Countrywide agent, Kelly. Kelly informed Plaintiffs that Wells Fargo, who had purchased the loan, was not negotiating any repayment plan at the time. Kelly also informed Plaintiffs of a need to wait for supervisory input.
>
> April 3, 2008: Corrine Booker was assigned to the file by Countrywide. She advised Plaintiffs that no developments in their case have occurred and that their patience was requested.
>
> April 4, 2008: Plaintiffs, speaking to Countrywide agent ("Bob"), requested a stay of the trustee's sale pending their discussions for mortgage payment modification relief.
>
> April 7, 2008: The Hope Department, a non-profit that assists mortgage borrowers with structuring repayment plans and repayment modification plans, called Plaintiffs, based on a Countrywide referral, and represented that it was unaware of Ms. Kauhi's case.
>
> April 9, 2008: Countrywide called and notified Plaintiffs' agent Louise Sandoval that the company was seeking other options for mortgage payment modification relief.

*Id.* at 19-22. While Plaintiffs claim they were promised loan modification, Plaintiffs do not allege that any representative of the Defendants made such a promise. *See generally Id*. Plaintiffs never received loan modification relief. *Id*.

On May 19, 2008, the bankruptcy court dismissed Plaintiffs' petition. Plaintiffs' residence was subsequently sold at the trustee's sale on June 20, 2008. *Id*. at 28.[2]

On September 26, 2008, Plaintiffs filed a complaint (Dkt. 1) in this matter against the named Defendants. On December 16, 2008, Plaintiffs filed a second amended complaint ("SAC," Dkt. 28). In their SAC, among other causes of action, Plaintiffs allege

---

[2] The residence discussed herein was apparently held by Ramona C. Kauhi as separate property. Dkt. 28 at 31. This fact does not appear to have any relevance to the matter before the Court.

ORDER - 3

the following claims against Defendants: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Pub. L. 91-452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961-1968 (1982 ed. and Supp. V)[3]; (2) violation of the Washington Criminal Profiteering Act of 1985, RCW 9A.82.080[4]; and (3) common law fraud.[5]

On August 10, 2009, Defendants filed a motion to dismiss these particular claims pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 59). On August 24, 2009, Plaintiffs filed a response to Defendants' motion. Dkt. 60. On September 4, 2009, Defendants filed a reply to Plaintiffs' response. Dkt. 61.

## II. DISCUSSION

**A.     Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)**

**1.     Rule 8**

Where a plaintiff's complaint fails to state a claim on which relief can be granted, the complaint must be dismissed. Fed. R. Civ. P. 12(b)(6). The court will find the complaint insufficient where it does not allege sufficient facts which, if true, would provide adequate grounds for the plaintiff's entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court, expanding on *Twombly*, held as follows in *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citations omitted):

> [T]he pleading standard [under Fed. R. Civ. P.] 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of further factual enhancement."

---

[3] This cause of action pertains to Plaintiffs' first claim for relief through their eighteenth claim for relief. *See* Dkt. 28 at 57-110.

[4] This cause of action pertains to Plaintiffs' nineteenth claim for relief. *See* Dkt. 28 at 112-115.

[5] This cause of action pertains to Plaintiffs' twenty-first claim for relief and is lodged only against Countrywide.

ORDER - 4

Where a complaint contains sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face," the complaint will survive a motion to dismiss. *Id*. (citing *Twombly*, 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead facts that allow the court to reasonably infer that the defendant is liable for that which is alleged. *Id*. (citing *Twombly*, 550 U.S. at 556). The Court, in *Iqbal*, noted the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In *Iqbal*, the Court noted two "working principles" that underlie the decision in *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Id*. In discussing the application of these principles, the Court further noted that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. at 1950 (citations and internal markings ommitted).

Plaintiffs, in addition to the claims of fraud (discussed below), assert a claim of conspiracy and aiding and abetting. This theory appears to be premised on the notion that the banks worked together to defraud Plaintiffs. But as is shown below, the pleadings are insufficient:

> 70. Plaintiffs allege plaintiff Ramona C. Kauhi's two (2) Countrywide Home Loans, Inc., mortgages, and such mortgages issued and or serviced by that corporate entity for other similarly situated persons, were deprived and/or denied obtaining mortgage relief by [the named Defendants who] designed, implemented, and executed an artifice and or scheme to defraud such persons by lulling them into a false sense of hope and/or security by representing that some form of mortgage relief . . . [would be provided], when in fact no such intention existed . . . ."

Dkt. 28 at 48. Plaintiffs further allege that Defendants engaged in a "course of conduct and pattern of practice whereby similarly situated persons who were issued" similar mortgages were lulled into the same situation by Defendants. *Id*. at 49. From these

ORDER - 5

assertions Plaintiffs claim Defendants are liable in conspiracy and aiding and abetting. *Id.* But the only facts, other than these threadbare recitals of the elements of the claimed causes of action, are ones which contradict Plaintiffs' position. In fact, Plaintiffs only cite conversations with particular agents of Defendants where the agents inform Plaintiffs either that no relief is going to be provided or that Defendants must wait for further word on whether they might qualify for mortgage payment relief. *See id.* at 19-22. Such pleadings do not, as a threshold matter, satisfy the requirements of Fed. R. Civ. P. 8. Further, it appears from the SAC, that Plaintiffs have failed to meet the minimum pleading requirements with respect to each of their claims, but Plaintiffs' claims of fraud (i.e., their RICO, Washington Profiteering Act, and common law fraud claims) are subject to a higher pleading standard. *See* Fed. R. Civ. P. 9(b). Thus, while these fraud claims will be analyzed under Rule 9(b), the Court, pursuant to Rule 8, dismisses Plaintiffs' conspiracy and aiding and abetting claims for failure to state a claim for which relief can be granted.

### 2. Rule 9(b)

Although a plaintiff will generally survive a motion to dismiss under Rule 12(b)(6) when the minimal notice pleading requirements are met, this is not the case when the plaintiff includes allegations of fraud in the complaint. Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud shall be stated with particularity." The particularity requirements of Rule 9(b) have been applied to RICO claims. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007); *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). To comply with Rule 9(b), a plaintiff must plead with specificity, to include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). The complaint must be specific enough to put the defendants on notice of the alleged misconduct that constitutes fraud in order for the defendants to defend

against the charge and not simply deny any wrongdoing. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

The Rule 9(b) pleading standard does not require a plaintiff to identify every false statement made by each and every defendant. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citations and quotations omitted). But, at the same time, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id*. In *Swartz*, the court held the Swartz's complaint patently failed to comply with Rule 9(b). *Id*. at 765. The court held the Swartz's complaint to be insufficient as a matter of law because the complaint failed to allege any factual basis for the complaint and was comprised of a conclusory set of general allegations against a group of defendants. *Id*.

Similarly, here, Plaintiffs have filed a complaint against several Defendants claiming they participated in an alleged fraudulent scheme. Plaintiffs claim violations of RICO, RCW 9A.82.080 (Washington's RICO equivalent), and common law fraud. Plaintiffs assert, however, that their complaint on these fraud claims need not "comply with FRCP Rule 9(b) particularity pleading requisite[s] for mail fraud and wire fraud pleading purposes." Dkt. 60 at 7 (citing *Larsen v. Lauriel Investments, Inc.*, 161 F. Supp. 2d 1029, 1042 (D. Ariz. 2001). But *Larsen* does not pertain to the pleading standards of Rule 9(b). Indeed, Plaintiffs do not cite any authority for the proposition that they are somehow relieved from the strictures of Rule 9(b) when averring instances of fraud. The Court finds that because this matter concerns Plaintiffs' claims of fraud, Plaintiffs are required to meet the requirements of Rule 9(b).

Plaintiffs have failed in their voluminous pleadings to separate and distinguish their allegations against Defendants. Plaintiffs have not asserted anything in their 158-page complaint, other than conclusory allegations and legal conclusions, that Defendants were conspiring in some fraudulent scheme. Plaintiffs claim they were promised mortgage payment relief. *See* Dkt. 28. Plaintiffs do not allege that any particular agent of

1 Defendants made such a promise. *Id*. Rather, Plaintiffs recount several instances where
2 agents informed Plaintiffs that no decision had been or would be reached on their
3 mortgage relief proposal. Such facts are contradictory to Plaintiffs' alleged fraud claim.

Plaintiffs' allegations of RICO violations on the part of Defendants are facially insufficient for at least two reasons. First, legal conclusions are not entitled to an assumption of truth. *Iqbal*, 129 S. Ct. at 1950. Second, conclusory allegations of fraud against multiple defendants without specificity are insufficient as a matter of law. *Swartz* 476 F.3d at 765.

Therefore, because Plaintiffs have lumped together the named Defendants, not plead with specificity in accord with Rule 9(b), and have made no showing of fraud other than threadbare recitals, the Court could dismiss Plaintiffs' RICO claims on this basis alone.

**B.     RICO**

   **1.     Plaintiffs' RICO Claims, Generally**

Plaintiffs' SAC contains thirty-one claims for relief. The first eighteen are RICO claims. *See* Dkt. 28 at 57-110. Defendants contend that the success of Plaintiffs' RICO claims numbered two through eighteen are each dependant on the success of Plaintiffs' first RICO claim. Dkt. 59 at 9. In other words, if the Court dismisses Plaintiffs' first RICO claim, it must necessarily dismiss the remainder of Plaintiffs' RICO claims. *See Id*. Plaintiffs do not dispute Defendants' contention on this point. *See* Dkt. 61. The Court finds that the same foundation that Plaintiffs rest their first RICO claim upon is the same on which the subsequent seventeen RICO claims rest. Thus, if the Court finds that Plaintiffs fail to present a claim for which relief can be granted on the first RICO claim, the Court finds the rest of Plaintiffs' RICO claims also fail.

   **2.     Sufficiency of Plaintiffs' RICO Claims**

RICO imposes criminal and civil liability upon those who engage in certain "prohibited activities." Plaintiffs have brought their RICO claim under Section 1962(c). To state a claim under the substantive provision of RICO, Section 1962(c), a plaintiff

ORDER - 8

must allege the following four elements: "(1) conduct (2) of an enterprise (3) through a *pattern* (4) of racketeering activity." *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985). "Racketeering activity" under RICO is defined as any act "chargeable" or "indictable" under a number of enumerated federal offenses ("predicate" offenses), including mail fraud and wire fraud, which are contended by the Plaintiffs in this case. *See* 18 U.S.C. § 1961(1); *see also* Dkt. 28. Elements (3) and (4), above, require Plaintiffs to establish a "pattern of racketeering activity." *Imrex*, 473 U.S. at 496.

To prove a pattern of racketeering, a plaintiff must establish at least two predicate offenses. *Clark v. Time Warner Cable*, 523 F.3d 1110-16 (9th Cir. 2008). At least two of the predicate offenses must have occurred within ten years. *H.J. Inc., v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 229 (1989). A plaintiff must further establish both "relationship" and "continuity" - "that the racketeering predicates are related, and that they either constitute or threaten long-term criminal activity." *Id* at 230.

Defendants claim Plaintiffs have failed to prove even one predicate offense, let alone two. Dkt. 59 at 11-12. In Plaintiffs' response (Dkt. 60), Plaintiffs do not dispute that they have failed to allege two predicate offenses. Instead, Plaintiffs cite *Westways World Travel* for the proposition that "the court [is] not required to examine individually each form of racketeering activity in order to determine whether a predicate offense was sufficiently pleaded." *See* Dkt. 60 at 6 (citing 182 F. Supp. 2d 952). Plaintiffs seem to argue that they are not required to plead predicate offenses. To the extent Plaintiffs make such a claim, the Court rejects the claim. It is well established that "[a] pattern of racketeering activity requires at least two predicate acts." *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952 at 956 (9th Cir. 2001) (citing *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1152 (9th Cir. 1992); *see also* 18 U.S.C. § 1961(5).

Plaintiffs' first racketeering claim consists of Plaintiffs listing federal statutes and then claiming that Defendants violated these statutes. Dkt. 60 at 57-60. Without the provision of supporting factual claims, Plaintiffs contend that the "aforementioned

ORDER - 9

activities" constitute "racketeering activity." *Id*. At 60. Plaintiffs do not aver any particular predicate offenses but, instead claim that "[t]he course of conduct engaged in by said defendants constitute both continuity and relatedness of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined pursuant to Title 18 U.S.C. § 1961(5)." *Id*. Such threadbare recitals that simply state elements and legal conclusions without setting out a factual basis for the claim are insufficient as a matter of law. *Iqbal*, 129 S. Ct. at 1950; *see also Swartz*, 476 F.3d at 765.

After reviewing Plaintiffs' 158-page complaint, it appears Plaintiffs contend that Countrywide, Bank of America, and the other Defendants engaged in a fraudulent scheme because Plaintiffs' house was sold at a trustee's sale even though Defendants "consistently confirmed" and "continuously advised and reassured" Plaintiffs that "mortgage relief would be forth coming." Dkt. 28 at 18. But such a claim, true or not, is not remotely sufficient to constitute the two predicate offenses that must be shown by the Plaintiffs before their RICO claims have any viability. Indeed, Plaintiffs do not even plead one predicate offense, which is fatal to their initial RICO claim. Because Plaintiffs' first RICO claim fails, as noted above, their other seventeen RICO claims also fail.

### 3. Conclusion

Therefore, because Plaintiffs fail to meet the pleading requirements of Fed. R. Civ. P. 9(b), their federal RICO claims are dismissed. Further, even if the Court found that Plaintiffs met the pleading requirements of Rule 9(b), Plaintiffs' eighteen RICO claims still fail because Plaintiffs do not allege the requisite two predicate acts.

**C.  Washington Criminal Profiteering Act**

Plaintiffs' nineteenth claim against Defendants is for violation of Washington's Criminal Profiteering Act of 1985, RCW 9A.82.080. In lodging this claim, Plaintiffs rely on and incorporate their factual allegations and all their claims for relief alleged in the previous eighteen RICO claims. Dkt. 28. at 112. To support this claim, Plaintiffs merely state that Defendants:

> employed the federal mails and/or federal interstate wires, as well as engaged in criminal profiteering as set forth, specifically, WASHRICO §§ 9A.82.010(4)(e) [theft] and 4(t) [money laundering], that such activities constituted a pattern of criminal profiteering activity, as set forth within WASHRICO § 9A.82.010(12), as alleged herein, to commit the primary contraventions alleged against them herein, aid and abet the primary WASHRICO § 9A.82.080(1)(a), (2)(a), conspiracy WASHRICO § 9A.82.080(3) contraventions committed defendants.

*Id.* at 113.

Under RCW 9A.82.080, Plaintiffs must establish a pattern of criminal profiteering. To do so, Plaintiffs must prove Defendants engaged in at least three acts of criminal profiteering that had the same or similar "intent, results, accomplices, principals, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events." *State v. Colquitt*, 136 Wn. App. 1051 (citing RCW 9A.82.010(15)); *see also* RCW 9A.82.010(12)(defining "pattern of criminal activity).

Plaintiffs' nineteenth claim fails to specify any factual basis to support that the claimed acts occurred. Further, Plaintiffs have failed to sufficiently plead even one act of criminal profiteering, let alone three as required by the statute. Instead, Plaintiffs only lodge threadbare recitals, which do not suffice to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Iqbal*, 129 S. Ct. at 1949.

Therefore, for very similar reasons that Plaintiffs' first eighteen RICO claims fail, Plaintiffs' Washington Criminal Profiteering claim fails as well.

**D.      Common Law Fraud**

The elements of a fraud claim are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speakers that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by plaintiff. *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996).

In this case, Plaintiffs fail to identify any facts which would support a plausible argument that Defendants intended to defraud Plaintiffs. Indeed, the statements that Plaintiffs attribute to the Defendants are better evidence that Plaintiffs had no reason to believe they would receive mortgage relief or that any had been promised. *See, e.g.*, Dkt. 28 at 20. Indeed, each agent discussed by Plaintiffs in their SAC provided similar responses regarding Plaintiffs' inquiries to Countrywide. Such responses are inconsistent with Plaintiffs' unsubstantiated claims of a scheme to defraud Plaintiffs.

Therefore, Plaintiffs have also failed to plead sufficient facts to support a common law claim of fraud.

**E.     Plaintiffs' Response**

Plaintiffs filed a response to Defendants' motion. Dkt. 60. The Court finds that this filing was, for the most part, non-responsive. Plaintiffs spent several pages justifying the 158-page length of their SAC (Dkt. 28). *See* Dkt. 60. This was not an issue before the Court. Plaintiffs also failed to dispute the greater majority of the arguments contained in Defendants' motion to dismiss. Moreover, Plaintiffs spent the majority of their response block-quoting and summarizing cases without providing legal analysis to show why the cases were relevant to this matter. *See* Dkt. 60. Still, Defendants entertained each of the irrelevant cases cited by Plaintiffs and attempted to ascertain any possible relevance. *See* Dkt. 61. Because Plaintiffs' response raises no relevant issues other than those already discussed herein, the Court adopts Defendants' analysis on these extraneous matters.

**F.     Conclusion**

Based on the foregoing, the Court finds that Plaintiffs have failed to withstand Defendants' motion to dismiss because they failed to state a claim for which relief can be granted. Ordinarily, in such a case, Plaintiffs would be permitted to amend their complaint to cure these deficiencies. However, Plaintiffs have already amended their complaint twice and, therefore, will not again be permitted to do so.

## III. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss certain claims (Dkt. 59) is **GRANTED**.

DATED this 29th day of September, 2009.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 13